UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO: 10-265

STEVEN WEATHERSBY                            SECTION: R(1)

## ORDER AND REASONS

Pro se defendant Steven Weathersby moves to vacate his sentence under 28 U.S.C. § 2255.[1] For the following reasons, the Court denies the motion.

## I. BACKGROUND

On February 3, 2012, the Government filed a superseding bill of information charging Steven Weathersby with three drug counts.[2] Count Four of the Superseding Bill of Information charged Weathersby as a prior felony offender, in violation of 21 U.S.C. § 851.[3] Weathersby pled guilty to the Superseding Bill of Information on February 7, 2012.[4] Before sentencing Weathersby, the Court ordered the parties to brief the issue of whether his previous carjacking conviction in Louisiana state court was considered a crime of

---

[1]    R. Doc. 66.

[2]    R. Doc. 29.  The Superseding Bill of Information charged Weathersby with (1) distribution of cocaine hydrochloride (for conduct occurring on January 14, 2010), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) distribution of twenty-eight grams or more of cocaine base (for conduct occurring on June 9, 2010), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (3) distribution of cocaine hydrochloride (for conduct occurring on June 9, 2010), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  *See id.*

[3]    *Id.* at 2.

[4]    R. Doc. 30.

violence for sentencing Weathersby as a career offender under 21 U.S.C. § 851.[5]  After determining that carjacking was a crime of violence and that Weathersby was properly considered a career offender, the Court sentenced Weathersby to 262 months, as to Counts One, Two, and Three, with all to run concurrently.[6]

Weathersby now moves to vacate his sentence under 28 U.S.C. § 2255.[7]  In support of his motion, Weathersby argues that the public defender who represented him rendered ineffective assistance at sentencing because she failed to properly challenge Weathersby's career offender qualification.   Weathersby asserts that had his counsel sufficiently investigated his underlying state-court carjacking conviction, she would have learned that Weathersby did not have assistance of counsel there and that therefore the conviction could not be used to enhance his sentence.[8]

Weathersby alleges that the facts surrounding his carjacking conviction in Louisiana state court are as follows.  On September 12, 2000, officers transported Weathersby from the Louisiana Department of Corrections to the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[9]  Weathersby alleges that he "did not even know why he was

---

[5]      R. Doc. 42.

[6]      R. Doc. 53.  Weathersby appealed his convictions and sentences on two grounds not relevant to the instant motion.  *See United States v. Weathersby*, 524 F. App'x 987, 988 (5th Cir. 2013).  On May 31, 2013, the Fifth Circuit affirmed Weathersby's convictions and sentences.  *Id.*

[7]      R. Doc. 66.

[8]      *Id.* at 4.

[9]      R. Doc. 66-1 at 2.

summoned to court" on September 12, 2000.[10]  When Weathersby entered the courtroom, a complete stranger named Andrew Hodges approached Weathersby and asked if he wanted to plead guilty to the carjacking charge.[11]  Hodges allegedly told Weathersby, "I'm just here to help you guys waive your rights."[12] Hodges and Weathersby did not discuss the facts or the law related to the carjacking or Weathersby's constitutional rights.[13] Weathersby then pleaded guilty to carjacking, and the state court sentenced him to two years in prison.[14] Weathersby insists that he never met with anyone about his case and that he was never advised that he had a legal right to be represented by counsel.[15]

In opposition, the Government argues that Weathersby mischaracterizes the facts of his carjacking conviction.[16]  The Government included with its opposition the minutes and transcripts from Weathersby's state court proceedings.

The state court minutes reveal that Weathersby was scheduled to appear for arraignment at the Nineteenth Judicial District Court on June 23, 2000. When Weathersby failed to appear, the court issued a bench warrant for his arrest and scheduled a bond

---

[10]     *Id.* at 6.

[11]     *Id.* at 2-3 ("Movant had never met or heard of 'Mr. Hodges' prior tot hat time."); *id.* at 6 ("Movant had no idea why a lawyer was appointed to stand with him in court."); R. Doc. 66-2 at 2 ("I had never met, spoken with, or otherwise associated with Mr. Hodges prior to that moment.").

[12]     R. Doc. 66-1 at 3.

[13]     *Id.* at 6.

[14]     *Id.* at 3.

[15]     *Id.*

[16]     R. Doc. 70 at 5.

hearing for July 14, 2000.[17]  The court minutes also reveal that at the July 14 bond hearing, Weathersby appeared in court and was advised of his right to counsel and his right to appointed counsel if he could not afford to retain an attorney.  Weathersby then  told the court that he could not afford to hire his own attorney.  After inquiring into Weathersby's financial status, the court appointed Assistant Public Defender Andrew Hodges to serve as Weathersby's counsel.[18]  Hodges conferred with Weathersby that day, and Weathersby entered a plea of not guilty.[19]  The court then notified Weathersby and Hodges in open court that it would hear any motions in Weathersby's case on September 12, 2000.[20]

The court minutes for September 12, 2000, reveal that Weathersby appeared in court with Andrew Hodges again serving as appointed counsel.  Hodges advised the court that Weathersby wished to withdraw his plea of not guilty and to enter a plea of guilty.[21]  The court asked Weathersby if he wished to plead guilty as charged to carjacking, to which Weathersby responded affirmatively.[22]  The court then questioned Weathersby regarding his understanding of the significance of his proposed plea.[23]  Specifically, the Court asked Weathersby whether he was being forced, threatened, or induced by promises to plead guilty.  The court also advised Weathersby that he was giving up his right to a trial; his right

---

[17]     R. Doc. 70-1 at 1.

[18]     *Id.* at 2.

[19]     *Id.*

[20]     *Id.*

[21]     *Id.* at 3.

[22]     *Id.*

[23]     *Id.*

to confront and cross-examine his accusers and the witnesses against him; his right to compel the State to prove his guilt beyond a reasonable doubt; his right against compulsory self-incrimination; and his right to compel witnesses to attend trial and testify on his behalf.[24]  Finally, the court explained to Weathersby the nature and elements of the crime of carjacking and further explained that this crime could later be used against him as a basis for charging Weathersby as a habitual offender, which would enhance any penalty a court may impose for any subsequent crime.[25]  The court found that Weathersby understood the significance of his guilty plea and was knowingly, intentionally, and intelligently waiving his right to plead not guilty.  The court then accepted Weathersby's plea of guilty and sentenced him to two years in prison.[26]  The transcript of the September 12, 2000 proceeding parallel the court minutes.  The transcript reflects that the following colloquy occurred between Weathersby and the judge:

> Q:      . . . . Before I accept your guilty plea I want to make sure that you understand what you are doing, that you want to freely and voluntarily enter into this guilty plea, and that you realize by pleading guilty you're giving up certain constitutional rights that you have. First of all, you have a right to a lawyer. If you couldn't afford a lawyer the court would appoint you a lawyer. In your case I've appointed the public defender's office to represent you. Have they explained to you what's going on here today?
>
> A:      Yes, Sir.
>
> Q:      Have they explained to you the consequences of pleading guilty?
>
> A:      Yes, Sir.

---

[24]     *Id.*

[25]     *Id.*

[26]     R. Doc. 70-1 at 4.

Q:      Have they explained to you the constitutional rights you have that you give up when you plead guilty?

A:      Yes, Sir.

Q:      Do you understand that your lawyer can give you advice and make a recommendation to you to plead guilty, but your lawyer can't plead guilty for you?

A:      Yes, Sir.

Q:      The only person who can plead guilty is you. It has to be your free and voluntary decision. Do you understand that?

A:      Yes, Sir.

Q:      Carjacking is the intentional taking of a motor vehicle belonging to another person in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle by use of force or intimidation. Do you understand that?

A:      Yes, Sir.

        . . . .

Q:      Are there any questions you want to ask?

A:      No, Sir.

Q:      Has anybody forced you or threatened you to get you to plead guilty?

A:      No, Sir.

Q:      Has anybody made any promises to you to get you to plead guilty?

A:      No, Sir.

Q:      Do you understand what's happening here to you today?

A:      Yes, Sir.

        The Court:     All right, what happened in this Case?

[The Assistant District Attorney]: Your Honor, if this matter proceeded to trial the State's evidence would show that . . . the defendant committed the crime of carjacking. . . . [H]e confronted the victim, who was a LSU student . . . . And he told him that he needed to have -- to give him his car keys; that he was going to take the car. He was armed with a revolver, so the victim in this case gave him the keys and allowed him to drive off with the vehicle because Mr. Weathersby was armed with a weapon. And when he was confronted by officers he -- the defendant admitted that he committed this crime.

The Court:     Is that about what happened, Sir?

The Defendant: Yes, Sir.

The Court: All right. The Court finds a factual basis for the guilty plea. Knowing what the charge is against you, what the possible penalties could be and what constitutional rights you have that you're giving up, do you still want to go ahead and enter into the guilty plea?

The Defendant: Yes, Sir, Your Honor.

The Court:     All right. The Court will accept his guilty plea. Sentence him to two years to two years [sic] in the department of corrections at hard labor to be served without benefit of parole, probation or suspension of sentence . . . .
     This sentence is agreed upon by the defendant; is that correct?

The defendant: Yes, Sir.

[The Assistant District Attorney]: Yes, Your Honor.[27]

Weathersby did not reply to the Government's memorandum in opposition.


## II.    LEGAL STANDARD

A federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a). Section 2255 identifies only four bases on which a motion may be made: (1) the sentence

---

[27]     R. Doc. 70-2 at 4-7.

was imposed in violation of the Constitution or federal laws, (2) the court was without jurisdiction to impose the sentence, (3) the sentence exceeds the statutory maximum sentence, or (4) the sentence is "otherwise subject to collateral attack." *Id.*

When a petitioner files a section 2255 motion, the court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the government to file a response or to take other appropriate action. *Id.* The court may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. Rules Governing Section 2255 Proceedings, Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8. The court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required, however, if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *Brecht*

8

*v. Abrahamson*, 507 U.S. 619, 629–30 (1993).  For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case.  *Id.* at 637–38; *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht*'s harmless error standard in a section 2255 proceeding).  If the court finds that the petitioner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

## III.    DISCUSSION

Weathersby argues that the public defender who represented him in this Court rendered ineffective assistance at sentencing because she failed to properly challenge Weathersby's career offender qualification.   Weathersby asserts that had counsel investigated his underlying state-court carjacking conviction, it would not have been used to enhance his sentence because he was essentially "uncounseled" in that proceeding.[28] *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (holding that counsel is obligated to fully investigate a defendant's background).

Having reviewed Weathersby's and the Government's submissions and the transcripts of Weathersby's state-court proceedings, the Court finds that an evidentiary hearing is not warranted.  Weathersby has failed to produce any independent indicia of the likely merits of his allegations.

---

[28]        R. Doc. 66 at 4.

### A.      Legal Standard for Ineffective Assistance of Counsel Claims

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must prove both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the defendant's rights were prejudiced as a result of that substandard performance.  *See Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). Petitioner must meet both prongs of the *Strickland* test; if the court finds that petitioner has made an insufficient showing as to either prong, the court may dismiss the claim without addressing the other prong.  *See id.* at 697.

Under the first prong, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy."  *Green v. Johnson*, 116 F.3d 115, 1122 (5th Cir.1997).   A court should not find inadequate representation merely because, with the benefit of hindsight, the court disagrees with counsel's strategic choices.  *Id.*  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir.1983)).

Under the second prong, to demonstrate prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome."  *Id.*

In certain Sixth Amendment contexts, however, prejudice is presumed.  *See id.* at 692.  "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."  *Id.* (citing *United States v. Chronic*, 466 U.S. 648, 659

10

& n. 25 (1984)).  A defendant may be "constructively denied" assistance of counsel even though an attorney was appointed to represent him.  *See Avery v. Alabama*, 308 U.S. 444, 446 (1940) ("The Constitution's guarantee of counsel cannot be satisfied by mere formal appointment.").  "That a person who happens to be a lawyer is present . . .  is not enough to satisfy the constitutional command."  *Strickland*, 466 U.S. at 687.

A court may find counsel's performance to be "so inadequate" that a defendant is effectively denied the assistance of counsel guaranteed by the Sixth Amendment.  *See Chronic*, 466 U.S. at 654 & n. 11.  As the Supreme Court holds, a presumption of prejudice for constructive denial arises when (1) a defendant has been completely denied counsel; (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing" or (3) the circumstances are of such "magnitude" that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."  *See id.* at 659.

The Fifth Circuit has applied the presumption of prejudice in cases involving "standby counsel"–counsel whose role is "one of an observer, an attorney who attends the proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense."  *Childress v. Johnson*, 103 F.3d 1221, 1231 (5th Cir. 1997) (citing *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir.), *cert. denied*, 502 U.S. 883 (1991)).  As the Fifth Circuit holds, "standby counsel is, in constitutional terms, no counsel at all."  *Id.*

In *Childress v. Johnson*, the defendant challenged a district attorney's use of two previous felony burglary offenses to enhance his sentence.  *See id.* at 1222.  The defendant claimed that in both cases, he was assigned court-appointed lawyers who never spoke to the

11

defendant about the crimes charged and never advised him of the rights he would give up by pleading guilty. *Id.* at 1223. According to the testimony of an attorney witness familiar with the state court's practice of appointing counsel to indigent defendants, counsel was usually appointed "a minute or two" before the defendant's plea was taken solely for the purpose of determining whether the defendant was prepared to plead guilty. *Id.* at 1223-24. The Fifth Circuit concluded, "[w]hen defense counsel is appointed solely to execute the defendant's waiver of jury trial, and when the evidence establishes that counsel performed no other service for the defendant, it cannot be said that the defendant received the assistance of counsel for his defense." *Id.* at 1232.

**B.    Analysis**

*1.    Weathersby's State-Court Conviction*

Here, Weathersby argues that counsel's assistance in his 2000 state-court carjacking conviction was so deficient, Weathersby was essentially "uncounseled" in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963). Weathersby alleges that he had never met or spoken with the court-appointed public defender before entering his guilty plea on September 12, 2000. According to Weathersby, he did not know why a lawyer was appointed to stand with him in court or why he was summoned to court at all. Weathersby further alleges that Assistant Public Defender Andrew Hodges never explained to Weathersby his constitutional rights or otherwise discussed with Weathersby the circumstances surrounding the carjacking charge. Finally, Weathersby asserts that Hodges told him, "I'm just here to help you guys waive your rights."

The state court record demonstrates that Weathersby's contentions are false. The state court record reflects the following facts, all of which are contrary to Weathersby's

assertions.  On July 14, 2000, two months before Weathersby pleaded guilty to carjacking, the Louisiana state court appointed Assistant Public Defender Andrew Hodges to serve as Weathersby's counsel.  Hodges was appointed only after the court specifically advised Weathersby of his right to counsel and his right to court-appointed counsel if he could not afford his own attorney.  Hodges conferred with Weathersby about his carjacking charge that day, and Weathersby then entered a plea of not guilty.  The court then instructed Hodges and Weathersby on the record that the next hearing in Weathersby's case would be on September 12, 2000.

On September 12, 2000, Weathersby, with Hodges still serving as his court-appointed counsel, returned to court for Weathersby's scheduled hearing date.  Weathersby told the court that he wished to plead guilty to carjacking.  The court then conducted a lengthy colloquy with Weathersby to determine whether he understood the significance of pleading guilty.  In response to the court's questioning, Weathersby testified on the record that his attorney had explained to him "what's going on here today," "the consequences of pleading guilty," and "the constitutional rights [that Weathersby was] giv[ing] up when [he] plead[ed] guilty."  Weathersby also testified that he understood the nature of the crime of carjacking.  Further, Weathersby agreed to the two-year term of imprisonment to which the court sentenced him.

In sum, the state court record shows that the assistance Weathersby's court-appointed public defender provided far exceeded the services of mere "standby counsel" that the Fifth Circuit criticized in *Childress. See* 103 F.3d at 1232.  In contrast to an attorney appointed only "a minute or two" before a criminal proceeding solely for the purpose of determining whether a defendant wished to plead guilty, Hodges

served as Weathersby's court-appointed counsel for nearly two months.  *See* 103 F.3d at 1223.  Moreover, Weathersby testified that before he pleaded guilty, he spoke with Hodges about the nature of the criminal proceeding, the consequences of pleading guilty, and what constitutional rights Weathersby would give up by doing so.  *See Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974) (holding that a criminal defense attorney "must actually and substantially assist his client in deciding whether to plead guilty").  Importantly, Weathersby's testimony in open court "carries a strong presumption of verity."  *See United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Because Weathersby has not shown that Hodges' performance was so inadequate that he essentially received "no counsel at all," the Court cannot presume that Weathersby suffered prejudice.  *See Chronic*, 466 U.S. at 654 & n. 11; *Childress*, 103 F.3d at 1231.

Having failed to demonstrate that he received constructive denial of counsel, Weathersby's fifteen-years-old state-court carjacking conviction is not otherwise subject to collateral attack.  When a prior conviction has not been set aside on direct or collateral review by the time of sentencing, "that conviction is presumptively valid and may be used to enhance the federal sentence."  *Daniels v. United States*, 532 U.S. 374, 382 (2001) (citing *Custis v. United States*, 511 U.S. 485, 497 (1994)) .  The Supreme Court has explained that this rule is subject to only one exception—when a prior conviction is allegedly the product of a *Gideon* violation, *i.e.*, that   it was obtained in violation of the defendant's Sixth Amendment right to counsel.  *See id.* at 382-83; *see also United States v. Gonzales*, 79 F.3d 413, 426-27 (5th Cir. 1996) ("Except in the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed, a defendant has no constitutional right to challenge prior convictions used to enhance a currently imposed

14

sentence." (citing *Custis*, 511 U.S. at 492-94).  As explained, that exception does not apply here.

  2. *Weathersby's Representation in Federal Court*

  Because Weathersby has failed to prove that he was constructively denied counsel in his state-court carjacking proceedings, the Court finds that Weathersby cannot prevail on his claim that he received ineffective assistance of counsel in his federal case.

  Weathersby's ineffective assistance claim rests upon his assertion that had the attorney who represented him in this Court properly investigated his carjacking conviction, she would have discovered its infirmity under the Sixth Amendment and argued that the carjacking conviction could not be used to enhance his sentence.[29] Weathersby argues that he suffered prejudice as a result because, without the carjacking conviction, the Court could not have classified him as a career offender and therefore would have sentenced him to significantly less time in prison.[30] As noted, Weathersby's state-court carjacking conviction was not obtained in violation of his Sixth Amendment right to counsel.  His counsel in this proceeding therefore was not deficient in failing to challenge that conviction on constitutional grounds.  Further, it was not improper for the Court to find that this conviction, in addition to Weathersby's other underlying felonies, qualified him as a career offender for sentencing purposes.  *See Gonzales*, 79 F.3d at 426-27 (citing *Custis*, 511 U.S. at 492-94).  Without any showing of prejudice, Weathersby's claim that he received ineffective assistance of counsel is without merit.  *See Strickland*, 466 U.S. at 694 (requiring defendant to show that "there is a reasonable probability that . . . the result of the

_____

[29] R. Doc. 66-1 at 6-7.

[30] *Id.* at 7.

15

proceeding would have been different").  Therefore, his section 2255 motion to vacate his sentence must be dismissed.

## IV.    CERTIFICATE OF APPEALABILITY

The Rules Governing Section 2255 Proceedings provide that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   Rules Governing Section 2255 Proceedings, Rule 11(a).  A court may only issue a certificate of appealability if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).  The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'"  *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003).  With respect to claims denied on procedural grounds, the petitioner must make a two-part showing: (1) that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," and (2) that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Johnson v. Quarterman*, 483 F.3d 278, 284 (5th Cir.2007) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Weathersby's motion does not satisfy these standards.  As the Court has explained, Weathersby's assertion that he was constructively denied assistance of counsel during his state-court criminal proceedings is without merit.  His assertion is based on a plainly

fictitious account of what occurred in the state court proceedings. Because Weathersby cannot show that his state-court proceeding was constitutionally deficient, Weathersby has failed to demonstrate that he suffered prejudice when the Court based Weathersby's career offender classification in part on the carjacking conviction. Accordingly, the Court finds that Weathersby has failed to make a substantial showing that his constitutional rights were compromised. Reasonable jurists would not find his arguments to be fertile grounds for debate.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES Steven Weathersby's motion to vacate his sentence under 28 U.S.C. § 2255 and DENIES Weathersby a certificate of appealability.

New Orleans, Louisiana, this ___23rd___ day of September, 2015.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

17